UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re SHORE TO SHORE REALTY INC.,                Chapter 7
                                                 Case No. 8-08-72760-reg
               Debtor.
---------------------------------------------------------------x
RICHARD L. STERN, as Trustee of the Estate of
SHORE TO SHORE REALTY INC.,

               Plaintiff,

   -against-
                                                 Adv. Pro. No.: 8-09-08296-reg
SINGH FACTORS, LLC, QUIK COMMISSION,
INC., and ABHIJIT RIKHY,

               Defendants.
---------------------------------------------------------------x

## MEMORANDUM DECISION

      This matter is before the Court pursuant to an adversary proceeding commenced by Richard L. Stern, the Chapter 7 trustee (the "Trustee" or "Plaintiff") in the bankruptcy case of Shore to Shore Realty Inc. (the "Debtor"). The Trustee seeks to recover approximately $228,000.00 from Singh Factors, LLC d/b/a Quik Commission ("Singh Factors" or "Quik"), Quik Commission, Inc. ("Quik Commission") and/or Abhijit Rikhy ("Rikhy") (collectively, with Quik and Quik Commission, the "Defendants"), which funds represent commissions from real estate closings held by the Debtor ("Transfers"). According to the Trustee's complaint, the Transfers are recoverable as fraudulent conveyances under 11 U.S.C. § 548(a) and New York Debtor and Creditor Law ("DCL") §§ 273-276. In the alternative, the Trustee seeks to recover the Transfers under the theories of conversion, conspiracy to defraud and/or aiding and abetting fraudulent transfers, which the Trustee alleges were orchestrated by the Debtor's principal.

Judgment by default has been entered in this adversary proceeding against Singh Factors and Quik Commission and a trial was held with respect to the claims against Rikhy.  Because Quik received the Transfers and not Rikhy, Rikhy cannot be held liable for the Transfers under the theories of fraudulent conveyance or conversion absent a finding that Rikhy is the alter ego of Quik.  The complaint contains no allegations that Rikhy is the alter ego of Quik, and the Trustee may not now assert in his post-trial submission that Rikhy is the alter ego of Quik.  Even applying the liberal standards set forth in Fed.R.Civ.P. 15(b), there are insufficient grounds to amend the complaint to include this as a claim or a remedy.  Rikhy cannot be found to have given his express consent to have this issue tried, nor does the Court find that this issue was tried with Rikhy's implied consent.  Permitting the Trustee to add this as a claim or form of remedy against Rikhy post trial  would severely prejudice Rikhy and put him at an unfair disadvantage.  For these reasons, the fraudulent conveyance and conversion claims are  dismissed.  The claim for conspiracy to defraud is dismissed because the Trustee failed to prove a *prima facie* case, and the claim for aiding and abetting a fraudulent conveyance shall be dismissed as this "claim" is not a recognized cause of action under New York law.  Therefore, the complaint against Rikhy is dismissed in its entirety.

*Facts*

Singh Factors is a New York limited liability company or a corporation, with an address located in Bellerose, New York.[1]  Quik Commission is a New York corporation, with an address located in Bellerose, New York.  Rikhy is an individual who resides at the same address as the

---

[1] According to Rikhy's testimony at trial, Singh Factors has not operated since 2007.  (June 8, 2010 Trial Transcript ("Trial Tr."), pg. 6)  According to Rikhy's post-trial submission, Singh Factors is a New York limited liability company ("LLC").  Other than the fact that the name of Singh Factors includes an LLC, there is no evidence in the record to establish whether Singh Factors is a corporation or an LLC.

address for Singh Factors. Singh Factors shall be referred to as Quik, which was its d/b/a. The Debtor operated two real estate sales offices on Long Island, one of which was affiliated with a national real estate firm, Weichert Realty. On May 27, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the Bankruptcy Code (the "Code"). The Trustee was appointed trustee of the Debtor's estate on May 27, 2008. The Trustee commenced this adversary proceeding on July 24, 2009. According to the complaint, between 2005 and 2007, the Defendants and Turk engaged in a scheme to divert approximately $228,000.00 of the Debtor's funds to Turk. The Trustee alleged that in furtherance of this scheme Turk entered into an arrangement whereby Quik advanced to Turk on a discounted basis future commissions that rightfully belonged to the Debtor. When the commissions were paid at the closing they would be directed to Quik, not the Debtor, therefore depriving the Debtor of the commission income.. As is typical in a factoring arrangement, Quik profited from the transactions by retaining the difference between the amount of the actual commissions and the advances made by Quik to Turk. The complaint identifies Rikhy as the principal of Quik and Quik Commission, and contains the allegation that Rikhy knew or should have known that Turk was diverting the Debtor's funds. The Trustee alleges that he is entitled to recover the Transfers to the Defendants pursuant to § 548 of the Bankruptcy Code and §§ 273 - 276 of the DCL. The complaint contains additional causes of action against the Defendants for aiding and abetting fraudulent conveyances, conspiracy to defraud creditors of the Debtor, and conversion. Quik and Quik Commission failed to file answers to the complaint and the Clerk of the Court noted the default of Quik and Quik Commission on November 10, 2009.

On August 19, 2009, Rikhy filed an answer containing general denials and asserting eleven affirmative defenses.[2] According to the remaining affirmative defenses, Rikhy asserts he is not a proper party to the action because he was only acting as an agent of Quik, and not in his personal capacity. Rikhy's answer also included a jury demand, which was denied by Order of the Court entered on November 16, 2009.

On November 10, 2009, the Trustee filed a Motion for Default Judgment against Quik Commission and Quik, and on January 29, 2010, the Trustee filed a Motion for Summary Judgment against Rikhy. Both motions were heard on March 8, 2010. The Court granted the Motion for Default Judgment against Quik and Quik Commission, which was unopposed, and an order and judgment was entered in favor of the Trustee and against Quik and Quik Commission in the amount of $228,789.38 with interest. In the Motion for Summary Judgment, the Trustee sought entry of judgment against Rikhy on the basis that the Transfers were fraudulent conveyances pursuant to DCL §§ 273. The Trustee also alleged that Rikhy should have known that the monies transferred from the Debtor to Quik represented commissions earned by the Debtor, and that by paying Turk instead of the Debtor, Rikhy was assisting Turk in the diversion of the Debtor's assets. Rikhy filed opposition to the Motion for Summary Judgment, alleging that summary judgment was not warranted because there were material issues of fact in dispute over whether Rikhy had knowledge of Turk's scheme and whether Quik received fair consideration for the transfers. Rikhy also alleged that there was a genuine issue of material fact in dispute over whether Rikhy knew or should have known that the advances Quik paid to Turk were property of the Debtor's estate. At a hearing held on March 8, 2010, the Court denied the

---

[2] The 4th, 5th, 6th, 7th, 8th, 9th and 11th affirmative defenses were stricken as they were unrelated and not relevant to the allegations contained in the complaint. These affirmative defenses relate to Bankruptcy Code §547(b).

Trustee's motion. The Court ruled that there was a genuine issue of material fact in dispute over whether Rikhy was the transferee of the funds from the Debtor. A trial was scheduled for June 8, 2010, and on June 2, 2010, the Trustee and Rikhy filed a joint pre-trial memorandum. In the Plaintiff's Statement of Facts, the Trustee alleged that Rikhy was the authorized agent of Quik, and that Quik and/or Rikhy made advances to Turk based on sales contracts arranged by the Debtor for its benefit. The Trustee also alleged that Rikhy entered into a conspiracy with Turk to divert funds from the Debtor, or at the very least, Rikhy should have known that Turk had engaged in a scheme to divert funds from the Debtor.

During trial, the Trustee established that Quik did not issue shares, Quik had no corporate resolutions and Rikhy was the sole owner of Quik. (Trial Tr., pg. 7) The Trustee did not raise the issue of whether Quik is a corporation or an LLC, and it appears that he assumed Quik is a corporation. According to the evidence admitted at trial, between May 3, 2005 and November 30, 2007, Quik issued 45 checks to Turk in amounts ranging from $254.00 to $14,080.00. Each of the transactions were documented using the same form documents. First, Turk submitted an application to Quik (the "Application"). (Trial Ex. E) On each Application Turk listed himself as the agent, the Debtor as the real estate company, and listed the property to be sold for which the commission of such sale would be factored. In addition, a Notice of Assignment of Real Estate Brokerage Commission (the "Notice of Assignment") was sent to the seller's attorney from Turk. In the Notice of Assignment Turk was defined as "Broker" and the Debtor was defined as "Real Estate Company." (Trial Ex. E) For each transaction, a Notice of Assignment was prepared, which includes the following: "Please take notice that Weichert Shore to Shore (Broker) has assigned his/her right, in whole or in part, to receipt of net commission in connection with the sale of real property located at . . . ." (Trial Ex. E)

When Rikhy was questioned at trial about the contracts of sale, which stated that the seller would pay the Debtor and not Turk any commissions earned, Rikhy testified that he had reviewed the relevant language but he had determined that based on the Application, the Notice of Assignment and through speaking with the seller's attorney Turk was entitled to receive the commissions. (Trial Tr. pg. 31) Moreover, Rikhy testified that Turk, as the principal of the Debtor, verified to Rikhy that Turk was entitled to the full commission generated from each sale in question. (Trial Tr. pg. 34) As a result, Turk was the proper recipient of the advances from Quik.

Towards the close of trial, Rikhy, who appeared *pro se*, testified that he received no funds from the Debtor or Turk, and that all checks representing commissions on the real estate sales were issued to Quik and were deposited into Quik's bank account. (Trial Tr. pg. 120-22) Rikhy reiterated that the Debtor's funds were never transferred to him personally and although judgment by default had been entered against Singh Factors and Quik Commission, Rikhy was not personally liable. (Trial Tr. P. 127) At no time during the course of the adversary proceeding through the conclusion of the trial did the Trustee ever allege that Rikhy was the alter ego of Quik Commission or Quik.

Both parties submitted post-trial briefs. Rikhy argues in his post-trial brief (the "Defendant's Post Trial Brief ") that he had no knowledge of the Debtor's insolvency, and he was not the initial or subsequent transferee of any funds from the Debtor. The transactions that resulted in the Transfers to Turk involved Quik, not the Debtor. Rikhy also argues that Quik is an LLC, not a corporation, and that Quik adhered to the requirements imposed upon LLCs under New York law. The Trustee, in his Post-trial Findings of Fact and Conclusions of Law (the "Plaintiff's Post-Trial Brief"), alleges that the Transfers are recoverable as fraudulent transfers

under the Code and the DCL.  The Trustee states for the first time that Rikhy is the alter ego of Quik, and is therefore personally liability for the actions of Quik.  The Trustee goes on to state that he has met his burden of proof on this issue.  At no time has the Trustee sought leave of the Court to amend his complaint to allege that Rikhy is liable as the alter ego of Quik.  The Trustee concludes that Rikhy failed to adhere to the customary formalities of corporate existence for Quik, and that Rikhy had no intention of treating Quik as a functional operating entity.  The Trustee also points to Rikhy's testimony regarding Quik and its operations to support his argument that Quik and Rikhy are one and the same.  On June 22, 2010, the Trustee filed a motion pursuant to Federal Rule of Civil Procedure 12(f), to strike the Defendant's Post-Trial Brief ("Motion to Strike") on the grounds that it contains purely argument without any legal support.

*Trustee's Motion to Strike*

As a preliminary matter, the Court shall address the Motion to Strike.  Under Rule 12(f) of the Federal Rules of Civil Procedure a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Furthermore, courts are unwilling to construe the word "pleading" broadly. *Bouchard v. Archdiocese of New York*, 2005 WL 356825 (S.D.N.Y. 2005).  The Defendant's Post-Trial Brief is not a pleading and is thus not subject to a Rule 12(f) motion. See *Hrubec v. National R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (Defendant's memorandum of law is not a pleading and thus not subject to a Rule 12(f) motion); *Burns v. Bank of America*, No. 03 Civ. 1685 (RMB) (JCF), 2007 WL 1589437 at *11 (S.D.N.Y. 2007) (Reply brief and exhibits are not pleadings, and therefore cannot be the subject of a motion under Rule 12(f)).  Therefore, the Motion to Strike is denied.

*Discussion*

*Counts 1 through 5 - Fraudulent Conveyances*

In this adversary proceeding, the Trustee asks the Court to find that Rikhy received transfers of the Debtor's property which are recoverable as fraudulent conveyances pursuant to Bankruptcy Code § 548(a), and §§ 273, 274, 275 and 276 of the DCL. Pursuant to Bankruptcy Code § 548(a), a transfer from a debtor may be recovered if it is made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became...indebted." 11 U.S.C. § 548(a)(1)(A). The focus of the inquiry regarding actual intent is on the state of mind of the debtor/transferor, not the transferee. *In re Singh,* 434 B.R. 298, 311 (Bankr. E.D.N.Y. 2010). Constructive fraud under § 548 (a)(1)(B) differs from actual fraud in that the transfer may be avoided regardless of the transferor's state of mind. *In re Bayou Group, LLC,* 439 B.R. 284, 330 (S.D.N.Y. 2010). A transfer is constructively fraudulent if: (1) the debtor received less than reasonably equivalent value in exchange for the transfer and (2) the debtor was (a) insolvent on the date of the transfer or became insolvent as a result of the transfer, (b) the debtor was engaged or was about to engage in a business or transaction for which any property remaining with the debtor was an unreasonably small capital, or (c) the debtor intended to incur or believed that it would incur debts beyond the debtor's ability to pay as such debts matured. 11 U.S.C. § 548 (a)(1)(B). *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535, 114 S. Ct. 1757, 128 L.Ed.2d 556 (1994). Pursuant to Bankruptcy Code § 544, the trustee may also bring a fraudulent conveyance action under the applicable state statutes ( in this case, the DCL) to recover property of the debtor. Under DCL § 276, as in Bankruptcy Code § 548(a)(1)(A), the trustee may recover fraudulent conveyances where the transferor intends to commit fraud. *Id.* (*citing U.S. v. Combs,* 30 F.3d 310, 328 (2d Cir. 1994)). Transfers made for which the debtor did not receive fair

consideration, while the debtor was insolvent, was rendered insolvent, or which transfers left the debtor with unreasonably small capital, or where the debtor believed it would incur debts beyond its ability to pay them as they come due, are also avoidable as fraudulent conveyances under the DCL. DCL, §§ 273 - 275. After a transfer has been successfully avoided, either under Bankruptcy Code § 548 or 544, the trustee may recover such conveyance from the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any "immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). The trustee may not recover from a transferee that takes for value, and without knowledge of the voidability of the transfer avoided, or any immediate or mediate good faith transferee of such transferee. 11 U.S.C. § 550(b).

Each of the causes of action outlined above require a finding that the defendant is a "transferee," either immediate or mediate, from the debtor. "A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance." *Fundacion Presidente Allende v. Banco De Chile,* 2006 WL 2796793 at \*3 (S.D.N.Y.) (citing *Schotastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir. 1993) (other citations omitted)). In this case, the Trustee acknowledges that Rikhy never personally received any of the Debtor's funds. Each conveyance was to Quik, and Quik issued checks to Turk. Rikhy's only connection to these transactions was as the principal of Quik. It is an "accepted principle that a corporation exists independently of its owners, as a separate legal entity and the owners are normally not liable for the debts of the corporation." *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 140 (1993). Moreover, "it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." *Id*.

Likewise, an LLC is a separate legal entity and its members are entitled to limited liability protection, much like owners of a corporation. *Weber v. King*, 110 F.Supp.2d 124, 127 (E.D.N.Y. 2000) (citing New York Limited Liability Company Law § 203(d)).

However, a corporation cannot be used as a mere shell for its owners to transact personal business purely for the owners' personal benefit. *Bravado Int'l Group Merchandising Services, Inc. v. Ninna, Inc.*, 655 F.Supp. 2d 177, 194 (E.D.N.Y. 2009) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)). When a corporation is used by an individual to accomplish his own personal business, that individual may be held liable for the acts of the corporation. *Bravado*, 655 F.Supp. 2d at 194. The "critical question" is whether the corporation is a "'shell' being used by the individual . . . to advance their own 'purely personal rather than corporate ends.'" *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*, 933 F.2d at 138 (citing *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656-57 (1976)).

Where appropriate, a plaintiff may seek to pierce the corporate veil of a corporation or an LLC to hold its owners liable for the debts of the corporation or LLC. *Jackson v. Corporategear, LLC,* No. 04 Civ. 10132 (DC), 2005 WL 3527148 at *2 (Dec. 21, 2005). Under New York law, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Finance,* 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 1160-61, 603 N.Y.S.2d 807, 810 (1993). Because Rikhy was not the transferee or legal beneficiary of the Transfers, Rikhy is only liable if the Trustee successfully pierces the corporate veil of Quik. The problem faced by the Trustee is that the complaint is barren of any

assertion that Rikhy is the alter ego of Quik or that the facts warrant piercing the corporate veil of Quik. While piercing the corporate veil isسometimes referred to as a cause of action or a claim, it is also view ed as a remedy imposed based on the facts and circumstances of the case. *In Matter of Mediators, Inc.,* No. 91 B 12980 (PBA), Adv. No. 93 CIV. 2304 (CSH), 1996 WL 297086 at *8 (S.D.N.Y.); *Sysco Food Service of Metro New York, LLC v. Jeckyll & Hyde, Inc.,* No. 08 Civ. 2958 (BS) (JCF), 2009 WL 4042758 at *2, (S.D.N.Y.) (citing New York case law). Whether it is a cause of action or a remedy, the pleadings must contain the claim that piercing the corporate veil is appropriate and must outline specific facts supporting such claim in order to satisfy the applicable notice and pleading standards. *Sysco Food Service of Metro New York, LLC v. Jeckyll & Hyde, Inc.* at *2, 3.

Federal Rule of Civil Procedure 8 applies in adversary proceedings. *See* Fed. R. Bankr P. 7008. Generally, a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). "Each allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1). The chief function of the pleadings under the Civil Rules is to give fair notice of the claim asserted in order for the defendant to answer and prepare for trial. *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citing *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988)). The complaint on its face does not satisfy Fed.R.Civ.P. 8(a) because the complaint contains no references to piercing the corporate veil of Quik or holding Rikhy liable as the alter ego of Quik.

The Trustee never sought leave of the Court to amend the complaint. However, such omission is not necessarily fatal to the Trustee's case:

> Under Fed.R.Civ.P. 15(b), '[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the

> pleadings.' In such a case, failure to amend the pleadings to conform them to the evidence and raise these issues does not affect the result of the trial. . . although the trial judge may allow such an amendment, even after judgment, either upon motion of any party, *id.*, or sua sponte, 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1493, at 461 (1971). Regardless of whether the pleadings are amended, however, the crucial test is whether the parties have consented to litigation of the issue, it must have been tried by their express or implied consent.

*Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd.,* 780 F.2d 1082, 1088 (2d Cir. 1986) (other citations omitted).

Rule 15(b) is "mandatory, not merely permissive, in requiring that issues that are tried, though not raised in the pleadings, be treated as if they were raised in the pleadings." *Ostano Commerzanstalt v. Telewide Sys., Inc.,* 880 F.2d 642, 646 (2d Cir. 1989) (citation omitted). The objective of the rule is to ensure that cases be decided on a "resolution of the actual dispute between the parties, rather than on the paper pleadings filed at the inception of suit." *Id.* Rule 15(b) further states that "failure to amend does not affect the result of the trial of that issue." Fed.R.Civ.P 15(b)(2).

There are two factors to consider when determining whether amendment to conform to the evidence at trial is mandated pursuant to Rule 15(b). *United States v. Certain Real Property & Premises*, 945 F.2d 1252 (2d Cir. 1991). The first factor requires a determination of whether there was express or implied consent to try such issue. *Id*. at 1257 (citing *Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir. 1989) (other citations omitted)). The second factor requires a finding that the defendant would not be prejudiced by the amendment. *Id*. The prejudice turns on "whether [the defendant] had a fair opportunity to defend and whether [the defendant] could offer any additional evidence if the case were to be retried on a different theory." *Id*. In making its determination, caution should be exercised to

ensure that the pleadings are not extended "to introduce issues inferentially suggested by incidental evidence in the record." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir.1977) (citing *Cole v. Layrite Products Co.,* 439 F.2d 958, 961 (9th Cir. 1971) and *Monod v. Futura, Inc.,* 415 F.2d 1170, 1174 (10th Cir. 1969)).

With respect to the first factor, there is no evidence that Rikhy expressly consented either before or during the trial to try the issue of whether he is the alter ego of Quik. Therefore, the Court can only consider Rikhy's liability as the alter ego of Quik if Rikhy gave his implied consent to try this issue. Implied consent has been found where a party fails to object at trial to the introduction of evidence which is relevant to the unpleaded issue. *Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082, 1089 (2d Cir. 1986). However, failure to object to evidence which is relevant to both pled and unpleaded issues does not constitute implied consent to try the unpleaded issues. In such a case, there must be some "obvious attempt" to raise the unpleaded issue. *Id.* (citing 6A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1493m at 462 (1971)),  This is to ensure that the party was aware that the issue had entered the case at trial. *Id.* Courts have also held that consent may be implied if the claim is introduced in a submission outside of the complaint such as in a pre-trial memorandum. See *Isik Jewelry v. Mars Media, Inc.*, 418 F.Supp. 2d 112, 131 (E.D.N.Y. 2005) ("By engaging a theory of liability in a 'pretrial memorandum,' [defendant] impliedly consents to this Court's consideration of [the unpleaded issue].").

There is no mention in the Joint Pretrial Memorandum or any other pretrial submission by the Trustee that the Trustee sought to pierce the corporate veil of Quik to hold Rikhy liable for Quik's acts. The Trustee did identify his alter ego theory until he filed the Plaintiff's Closing Brief. The only evidence adduced at trial which could be construed as support for piercing the

corporate veil is that Quik and Rikhy shared the same address and Quik did not comply with all of the corporate formalities imposed upon corporations under New York law.³ During the trial, the Trustee did not argue or reference any conclusion that Rikhy and Quik should be deemed to be one and the same. The record contains no facts to support a finding that the Trustee raised or attempted to raise the issue of whether the corporate veil of Quik should be pierced. Rikhy could not have known that by eliciting testimony about the structure of Quik and the location of its business address, the Trustee was seeking to find Rikhy liable for Quik's actions. This evidence was also relevant to other allegations in the complaint and the introduction of this evidence without objection does not warrant a finding that Rikhy impliedly consented to try the issue of whether he is the alter ego of Quik.

In evaluating the second factor, the Court must consider "whether the failure to plead the claim raised at trial disadvantaged the opponent in presenting its case." *Silverstein v. Penguin Putnam, Inc.* 522 F.Supp.2d 579 (S.D.N.Y. 2007) (citation omitted). In this case, Rikhy would be severely prejudiced if the Court were to allow the Trustee to claim that the corporate veil of Quik should be pierced to hold Rikhy liable. Introduction of this new theory is impermissible even in light of the liberal pleadings standards set forth in Rule 15(b) since Rikhy did not have a fair opportunity to defend against this theory. *Rogers v. Valentine,* 306 F. Supp. 34, 38 (S.D.N.Y. 1969). Rikhy's central defense in this adversary proceeding has been that Quik and not Rikhy entered into the transactions at issue. This defense does not effectively rebut a claim, if proven, that the corporate veil of Quik should be pierced in order to hold Rikhy liable for

---

³According to the Defendant's Post-Trial Brief, Quik is an LLC, which is subject to different requirements than a corporation under New York law. Because there is no testimony or documentary evidence to determine whether Quik is a corporation or an LLC, the Court is not in a position to determine whether Quik has complied with the requirements imposed upon it by New York law.

Quik's transactions. Rikhy would be put at a clear disadvantage if his defense had to cover the additional theory of piercing the corporate veil. The fact that the Defendant's Post-Trial Brief addressed whether Rikhy is the alter ago of Quik does not cure the prejudice Rikhy would sustain. Rikhy would be deprived of an opportunity to introduce documents and testimony in his defense on this theory, which is the precise reason the complaint cannot be amended at this time. Therefore, since there was no express or implied consent to try the issue of piercing the corporate veil of Quik and amending the complaint at this date would work a severe disadvantage to Rikhy, the Court shall not permit the complaint to be so amended.

*Aiding and Abetting Fraudulent Transfer*

The Trustee's sixth claim against Rikhy is for aiding and abetting the alleged fraudulent transfers to Turk. However, aiding and abetting a fraudulent transfer is not a legally cognizable action under New York law via Bankruptcy Code § 544 or under Bankruptcy Code § 548. *See In re Parker,* 399 B.R. 577, 580 (Bankr. E.D.N.Y. 2009) (There is no cause of action under New York law for aiding and abetting a fraudulent transfer because the defendants are not transferees of the assets, nor are they beneficiaries of the conveyance in question) (*citing Roselink Investors, LLC v. Shenkman*, 386 F. Supp.2d 209, 227 (S.D.N.Y. 2004) and *Geren v. Quantum Chemical Corp.*, 832 F. Supp. 728, 736-37 (S.D.N.Y. 1993), *aff'd,,* 99 F.3d 401 (2d Cir. 1995) (other citations omitted)). Even if Rikhy did aid and abet Turk in some scheme to fraudulently transfer assets of the Debtor, the Trustee could not pursue a claim against Rihky. Therefore, the sixth cause of action shall be dismissed.

*Conspiracy to Defraud Creditors*

In order to succeed on the seventh cause of action for civil conspiracy, the Trustee must

prove: (1) a corrupt agreement between two or more parties, (2) an overt act in furtherance of the agreement, (3) a party's intentional participation in furtherance of the plan; and (4) resulting damage or injury. *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (citing *Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc.2d 1, 7, 380 N.Y.S.2d 532, 538 (Sup. Ct.1976) and *Suarez v. Underwood*, 103 Misc.2d 445, 447, 426 N.Y.S.2d 208, 210 (Sup..Ct.1980)). The record does not support a finding that Rikhy and Turk ever entered into an agreement to defraud the Debtor. Rather, it appeared that Turk acted entirely alone, and Rikhy had no knowledge that Turk was involved in any scheme to defraud the Debtor. (Trial Tr. at pg. 31, 34) Because the record does not support a finding that any of the remaining elements of conspiracy have been satisfied, the seventh cause of action must be dismissed as well.

*Conversion*

The eighth cause of action is based on conversion. To establish a claim for conversion, the Plaintiff must prove: 1) the Debtor had title to the property in question or had a right to its possession, 2) Rikhy converted the property, 3) Rikhy exercised unauthorized dominion over the property, and 4) the Debtor was damaged by the conversion. *In re Harvard Knitwear, Inc.,* 153 B.R. 617, 624 (Bankr. E.D.N.Y. 1993) (citing *Meese v. Miller*, 79 A.D.2d 237, 242-43, 436 N.Y.S.2d 496, 500 (4th Dep't 1981); *AMF Inc. v. Algo Distribs., Ltd.*, 48 A.D.2d 352, 356-57, 369 N.Y.S.2d 460, 464 (2d Dep't 1975); and 23 N.Y.Jur.2d Conversion § 78 (1982)). This claim fails for the same reasons the fraudulent conveyance claims fail. Rikhy did not exercise dominion or control of the property - Quik was the recipient of the Transfers. Because the complaint cannot be amended to include a claim or remedy of piercing the corporate veil as there was no express or implied consent by Rikhy to amend the complaint, this cause of action shall be dismissed.

*Conclusion*

For the reasons set forth above, the Motion to Strike is denied and the complaint is dismissed as to Rikhy.  An order and judgment consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
      February 1, 2011                             By:*/s/ Robert E. Grossman*
                                                    Robert E. Grossman
                                                    United States Bankruptcy Judge